## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CATCH CURVE, INC.,                        )

    Plaintiff and Counterclaim Defendant,     )    Civil Action File No.
                                                     )    1:06-CV-2199-CC

v.                                        )

INTEGRATED GLOBAL CONCEPTS, INC.,         )

    Defendant and Counterclaim Plaintiff,     )

         and                                 )

MEIXLER TECHNOLOGIES, INC.,               )

    Defendant.                                )

                                                )

——————————————————————————)

INTEGRATED GLOBAL CONCEPTS, INC.,         )

    Counterclaim Plaintiff,                   )

v.                                        )

J2 GLOBAL COMMUNICATIONS, INC.,           )
AUDIOFAX, INC. and AUDIOFAX IP LLC,       )

    Additional Counterclaim Defendants.       )

——————————————————————————)

## COUNTERCLAIM DEFENDANTS CATCH CURVE, INC. AND j2 GLOBAL COMMUNICATIONS, INC.'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS DEFENDANT IGC'S COUNTERCLAIMS

Plaintiff and Counterclaim-Defendant Catch Curve, Inc. ("Catch Curve") and Additional Counterclaim Defendant j2 Global Communications, Inc. ("j2") respectfully submit this Reply in support of their Motion to Dismiss Counts IV, V, and VII of IGC's Counterclaim.

## INTRODUCTION

IGC devotes over a third of its Response to the Motion to Dismiss ("Response") to urging this Court not to take notice of the ruling in *Catch Curve, Inc.* v. *Venali, Inc.*, Case No. 05-4820-DDP, a case that IGC itself put at issue. IGC previously asked this Court to "follow Judge Pregerson's well-reasoned rulings" in that "very similar case" (Docket No. 94), even attaching those rulings to its motion, but now asks the Court to blind itself to the outcome of the *Venali* case. It is easy to understand IGC's about-face. Judge Pregerson ruled in the *Venali* case that Catch Curve's claims—substantially the same as the claims here—were not objectively baseless as a matter of law and therefore were protected by *Noerr-Pennington* immunity. *Catch Curve, Inc.* v. *Venali, Inc.*, Case No. 05-4820-DDP (C.D. Cal. Nov. 3, 2008) (Exhibit A to Motion). His ruling, which is based on the same legal inquiry at issue here, completely undermines IGC's position, establishes that IGC's allegations are without merit, and compels granting Catch Curve's Motion to Dismiss.

# ARGUMENT

## I.   IGC Fails to Cure Its Shotgun Pleading Deficiencies.

The Eleventh Circuit rejects pleadings, like the ones IGC has repeatedly filed in this case, that rely on "rambling recitations" and "irrelevant factual allegations and legal conclusions" in lieu of the requisite "short and plain statement of the claim." *Pelletier* v. *Zeifel*, 921 F.2d 1465, 1517-18 (11th Cir. 1991).  Like IGC's first pleading, the FAC — at 63 pages and 244 paragraphs long, with Counts IV and V (at issue in this Motion) incorporating by reference over 200 of those paragraphs — is disorganized and repetitive, and, particularly coupled with IGC's similarly repetitive and disorganized Response Brief, leaves it to the Court to "sift through the facts presented and decide for [itself] which were material to the particular cause of action asserted." *Id*.  As such, dismissal is warranted.[1]  *See id*.

## II.   The Court Should Take Judicial Notice of Prior Rulings Dispositive To This Case.

IGC's assertion that Judge Pregerson's rulings are not subject to judicial notice is remarkable, given that in opposing j2's motion to dismiss IGC's first attempt to plead its counterclaims, IGC itself submitted a previous ruling in

---

[1]   IGC notes that it has dropped some of the outlandish claims and irrelevant parties present in its original pleading.  (Response at 25.)  It should not receive credit, however, for dropping these claims and parties (after forcing Counterclaim Defendants and other parties to bring motions to dismiss) that never should have been brought in the first place.

the *Venali* case.  (Docket No. 59, Ex. 1.)  Then, in opposing j2's motion to dismiss

IGC's amended counterclaims (prior to the case being stayed), IGC submitted *two*

rulings from the *Venali* case and, on the first two pages of its brief, told this Court

that the rulings were dispositive.  (Docket No. 94 & Exs. 1 & 2.)  Those same two

rulings are attached as exhibits to IGC's Counterclaim.  (Docket No. 85.)  Even

now, IGC asks the Court to look to the claim construction adopted by the District

Court and Federal Circuit in the *Venali* case.  (Response at 2.)[2]  Yet IGC

simultaneously demands that the Court ignore the ruling in that *same case* that

establishes that it has no viable antitrust claim.  IGC's contradictory and self-

serving stance is without logical rationale or justification.

   Moreover, judicial notice of the *Venali* rulings and briefs is proper.

The Court's ruling and related briefs are a matter of public record and are available

on PACER.  The ruling is an adjudicative fact "not subject to reasonable dispute"

and both "generally known within the territorial jurisdiction of the trial court" and

"capable of accurate and ready determination by resort to sources whose accuracy

cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Contrary to IGC's

assertion (Response at 10), these materials are  submitted by j2 and Catch Curve

---

[2] Indeed, at one point IGC indicates that it "received a favorable ruling at the Federal Circuit," substituting itself for Venali, the actual party to that ruling. (Response at 6.)  This statement is further evidence of the reality, tacitly acknowledged by IGC, that the issues in this case are, as a practical matter, the same as the issues in the *Venali* case.

not for the truth of assertions within them, but rather to establish the fact that the Court found that Catch Curve's patent infringement claims were not objectively baseless and dismissed Venali's antitrust claims (which are identical to IGC's claim) on that basis.  The court's ruling was given as a matter of law, not a ruling based on disputed material facts.  *Catch Curve, Inc.* v. *Venali, Inc.*, Case No. 05-4820-DDP (C.D. Cal. Nov. 3, 2008) (Exhibit A to Motion).  The supporting briefs are likewise submitted not to establish the truth of their content, but to provide additional context to the Court's ruling and establish the fact that Venali's contentions mirror IGC's and that the outcome here must be the same.

## III.   IGC's Counterclaim Fails to Allege Sufficient Facts to Overcome *Noerr-Pennington* Immunity.

IGC acknowledges that *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) controls, requiring IGC to allege facts (as opposed to legal conclusions) establishing a plausible ground for relief and "do more than make 'a formulaic recitation of the elements of a cause of action.'"[3]  (Response at 13-14.)  IGC fails to follow this directive, however,  haphazardly muddling facts and legal conclusions, resulting in a series of "facts" that are actually legal conclusions and conclusory allegations insufficient to state a claim.  *See Davila* v. *Delta Air Lines*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted

---

[3]    IGC's cases stating that motions to dismiss are disfavored in antitrust cases (Response at 14-15, 18-19) pre-date *Twombly* and therefore do not reflect current law.

4

factual deductions or legal conclusions masquerading as facts will not prevent dismissal [under Rule 12(b)(6)]").  Furthermore, despite IGC's comments to the contrary, (Response at 14), *Twombly* does not hold that a plaintiff can withstand a motion to dismiss by relying on bare, conclusory allegations and hoping to establish factual support in discovery.  *See CBT Flint Partners, LLC* v. *Goodmail Sys., Inc*., 2007 WL 4531829 (N.D. Ga. Dec. 17, 2007) (*Twombly* forecloses litigants from "answering motions to dismiss by responding, 'Although I can't make a good faith allegation of illegal conduct now, I bet I'll find something good during discovery.'").

In order to avoid dismissal of its Sherman Act claims, IGC must overcome the strong presumption that Catch Curve is protected in its efforts to enforce its patents by *Noerr-Pennington* immunity.  As IGC appears to acknowledge, under First Amendment law, Catch Curve has a right to petition the government for redress for the infringement of its patents, and is protected from antitrust law in the process.  *See Prof'l Real Estate Investors* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("*P.R.E.*").

The exception to the *Noerr-Pennington* doctrine upon which IGC relies applies only to lawsuits that are "objectively baseless in the sense that no reasonable litigation could realistically expect success on the merits" and where the party bringing the lawsuit "did so with a subjective motivation to interfere directly

with the business relationships of a competitor." *P.R.E.*, 508 U.S. at 58; *Andrx Pharms., Inc.* v. *Elan Corp., PLC*, 421 F.3d 1227, 1234 (11th Cir. 2005). This standard strictly limits the lawsuits that may be stripped of immunity, creating a high burden for plaintiffs. *See BE&K Constr. Co.* v. *NLRB*, 536 U.S. 516, 527 (2002) (ruling that a suit may not be held baseless when genuine issues of material fact or state law exist); *Dominant Semiconductors Sdn. Bhd.* v. *Osram Gmbh*, 524 F.3d 1254, 1261-62 (Fed. Cir. 2008) (rejecting plaintiff's efforts to apply a lower Rule 11 type standard to lawsuits alleging unfair competition arising from assertion of patent rights); *Atico Int'l USA, Inc.* v. *Luv N' Care, Ltd.*, 2009 WL 2589148 at *4 (S.D. Fla. Aug. 19, 2009) (dismissing claim when plaintiff did no more than state "on information and belief" that the suit in question was baseless).

Although IGC repeatedly incorporates the term "sham litigation" into its accusations throughout the Counterclaim, it fails to allege *facts* that would establish a plausible basis for such a claim. *See Atico Int'l USA, Inc.*, 2009 WL 2589148 at *4; *Hartford Life Ins. Co.* v. *Variable Annuity Life Ins. Co.*, 964 F. Supp. 624, 627 (D. Conn. 1997) (noting that probable cause is an absolute defense to a claim of sham litigation, and that allegations that the party would succeed on its defenses were insufficient to plead a claim for sham litigation). In fact, IGC's six-page argument about the plausibility of its allegations (Response at 13-19) fails to identify a single factual allegation suggesting this or any other litigation is

objectively baseless.  IGC instead points to allegations of activities that are in no way improper and are unrelated to whether there is a basis to pierce *Noerr-Pennington* immunity, such as j2 acquiring Venali and holding patents in subsidiaries.  (*Id.*)  Nowhere in its Response does IGC identify facts supporting its conclusory accusations that Catch Curve's lawsuits are objectively baseless.

The closest IGC's Counterclaim comes to alleging a basis to pierce *Noerr-Pennington* immunity is the allegation that the AudioFAX patents do not cover "fax-to-email services," such as IGC's services.  (Countercl. ¶¶ 26, 44.)  But this legal conclusion regarding the scope of the AudioFAX patents is simply IGC's position in the lawsuit – it is not a fact.  *See Hartford Life Ins.*, 964 F. Supp. at 627.  Moreover, Judge Pregerson has already held, as a matter of law, that Catch Curve's argument that the AudioFAX Patents cover fax-to-email services was not objectively baseless and cannot provide the basis for an antitrust claim.  *Catch Curve, Inc.* v. *Venali, Inc.*, Case No. 05-4820-DDP (C.D. Cal. Nov. 3, 2008) (Exhibit A to Motion).

Although IGC conclusorily alleges that Catch Curve's lawsuits are objectively baseless, the *factual* allegations in the Counterclaim and IGC's Response undermine rather than support that conclusion.  For example, IGC alleges that j2, Catch Curve's parent, was sued on the basis of the AudioFAX patents, vigorously resisted the lawsuit, and eventually became one of many

companies to take a license for the AudioFAX patents.  (*See* Countercl. ¶¶ 18, 22.)

Later, j2 acquired the AudioFAX patents and continued to assert those patents

through a licensing program similar to the one already in place.  (Countercl. ¶¶ 23-

25.)  In a 2007 ruling in *Catch Curve*  v. *Venali*, Case No. 05-4820-DDP (C.D.

Cal.), Judge Pregerson limited the scope of the patents, but determined that Catch

Curve's argument for a more expansive construction of the patents that would have

covered fax-to-email services was not objectively baseless as a matter of law.  (*See*

Countercl. ¶ 53.)  In light of this ruling, Catch Curve has indicated that it will

assert infringement against only the fax-to-fax components of IGC's services,

which is consistent with both Judge Pregerson and the Federal Circuit's

constructions.  (*See* Response at 5.)

Given these uncontroverted facts alleged by IGC, Catch Curve's

assertion of these patents, which have never been invalidated and have been used

to successfully license more than 50 companies *including* j2, is entitled to *Noerr-

Pennington* immunity as a matter of law.  *See Q-Pharma, Inc.* v. *Andrew Jergens

Co.*, 360 F.3d 1295, 1305 (Fed. Cir. 2004) (upholding finding of immunity as a

matter of law following voluntary dismissal of patent suit when faced with motion

for summary judgment of non-infringement); *Thermalloy Inc.* v. *AAVID Eng'g*,

935 F. Supp. 63, 67-68 (D. N.H. 1996) (finding immunity as a matter of law where

plaintiff held a patent which defendant challenged as having prior art, and where

patent was altered through the reexamination process and then found to be invalid); *AstraZeneca AB* v. *Mylan Labs, Inc.*, 2010 WL 2079722 at *4 (S.D.N.Y. May 19, 2010) (unsuccessful suit for patent infringement did not constitute sham litigation as a matter of law because there were genuine issues of fact in the patent litigation).

   IGC also asserts that it has adequately pled a *Walker Process* claim. (Response at 3, 19-26.)  A *Walker Process* claim, like any other fraud claim, must be pled with particularity, as demonstrated by the very cases IGC cites for support. *See Hydril Co. LP* v. *Grant Prideco LP*, 474 F.3d 1344, 1349 (Fed. Cir. 2007) (indicating that a *Walker Process* claim is a variant of common law fraud); *Chip-Mender, Inc.* v. *Sherwin-Williams Co.*, 2006 WL 13058 at *6 (N.D. Cal. January 3, 2006) (ruling that a claim for *Walker Process* fraud is subject to Federal Rule of Civil Procedure 9(b)) (citing *Nobelpharma AB* v. *Implant Innovations, Inc.*, 141 F.3d 1059, 1069-70 & n.7 (Fed. Cir. 1998)).  IGC's claim fails to meet this pleading hurdle for several reasons.

   First, a *Walker Process* claim requires a showing that a patent was obtained by knowing and willful misrepresentation of facts to the USPTO; good faith furnishes a complete defense.  *Walker Process Equip., Inc.* v. *Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965).  IGC has failed to plead particular facts sufficient to show that the alleged failure to inform the USPTO of documents

allegedly comprising prior art for the AudioFAX patents was willful or knowing. Among other flaws, IGC has failed to plead facts establishing that AudioFAX knew the documents referenced related to the AudioFAX patents, or that there was opportunity to present those documents to the USPTO.

Second, IGC has failed to plead facts sufficient to show that the alleged failure to inform misled the examiner. A *Walker Process* claim requires that the misrepresentation misled the examiner into taking favorable action that would not otherwise have been taken, or in other words, that the information was material. *C.R. Bard* v. *M3 Sys.*, 157 F.3d 1340, 1365 (Fed. Cir. 1998). The only *facts* alleged to support this claim, as distinct from conclusory allegations, are that (a) the products described in the allegedly withheld documents had store and forward capabilities and were sold more than a year before the AudioFAX patents, (b) IGC provided AudioFAX with the documents in 2003, and (c) AudioFAX did not pass along the documents to the USPTO. (Countercl. ¶¶ 64-69.) There is no allegation that AudioFAX understood that the documentation provided was relevant to the patents at issue, that there was an opportunity for AudioFAX to provide the documentation to the USPTO, or that the purported prior art was unknown to the USPTO.

Third, even if IGC had plead facts sufficient to state a claim of fraud on the part of AudioFAX, which it has not, IGC fails to provide any relevant

connection between that alleged fraud and Catch Curve's later enforcement of the patents.  In order for a *Walker Process* claim to carry over to a later enforcer of the patent, the party advancing the claim must plead facts establishing that the enforcer knew that the patent had been procured by fraud on the PTO.  *See Abbott Labs.* v. *Teva Pharma, USA Inc.*, 432 F. Supp. 2d 408, 432 (D. Del. 2006).  IGC has not pled *any* facts sufficient to establish such a claim, other than indicating that Catch Curve cited one of the documents IGC claims was prior art to the AudioFAX patents in the prosecution of a different patent before the USPTO.  (Countercl. ¶ 70.)

Specifically, IGC asserts that, in June of 2003, *a full two years before j2 acquired the AudioFAX patents*, AudioFAX neglected to make the USPTO aware of documents that IGC alleges constitute prior art.  (Countercl. ¶¶ 64-69.) IGC then asserts that, *four years later*, and in the prosecution of an entirely separate patent not at issue in this case, Catch Curve did not provide adequate information regarding a document it cited to the USPTO.  (Countercl. ¶¶ 70-71.) Having made these two unrelated and unsupported allegations, IGC claims to have established a factual basis for its claim that Catch Curve should be denied *Noerr-Pennington* immunity because it "knew about the past fraud" and "committed its own acts of fraud" before the PTO.  (Response at 20.)

It is a vast leap to conclude on the basis of these facts that Catch Curve knew that AudioFAX committed fraud on the USPTO because it did not disclose the same document in an unspecified proceeding regarding different patents. *Twombly* does not permit the Court to make such a leap. Accordingly, IGC's *Walker Process* claims must fail and the Counterclaims dismissed pursuant to Catch Curve's *Noerr-Pennington* immunity.

## IV.   IGC Has Not Adequately Alleged an Antitrust Injury.

### A.   IGC's Litigation Expenses Do Not Constitute Antitrust Injury.

IGC's antitrust claims must be dismissed for the additional reason that IGC has not alleged antitrust injury. *See Joblove* v. *Barr Labs, Inc.* 466 F.3d 187, 219 (2d Cir. 2006) ("[A] plaintiff, in addition to stating an antitrust violation, must allege facts sufficient to prove that it suffered antitrust injury."). As stated in Catch Curve's Motion, the only injury IGC claims and supports with factual allegations is having been named in a lawsuit, and accordingly paid the costs and expenses arising as a result of this litigation.[4]

Such costs do not constitute a cognizable antitrust injury. *See AMA* v. *United Healthcare Corp.,* 2007 WL 683974, at *5 (S.D.N.Y. March 5, 2007);

---

[4]    IGC indicates in its Response that it has "endur[ed] 5 years" of litigation in this case, (Response at 6), a clear mischaracterization, given that the case was stayed from February of 2009 until approximately July of 2010, no infringement or invalidity contentions have been prepared and served, no discovery requests have been propounded, and the bulk of the time has been spent on motions and hearings regarding the insufficiencies of IGC's Counterclaim.

*Chip-Mender, Inc.*, 2006 WL 13058, at *5.  In *Brotech Corp.* v. *White Eagle Int'l.*

*Tech. Group, Inc*., 2004 WL 1427136 (E.D. Pa. June 21, 2004), the Court

dismissed an antitrust claim because:

> [a]n antitrust plaintiff must show that the allegedly anticompetitive
> conduct harmed "the competitive landscape."  While the Amended
> Counterclaim alleges that [Defendant's] payment of defense costs in
> this litigation flows from Plaintiffs' allegedly anticompetitive conduct,
> there is no allegation that said payment had any effect on competition,
> on the price, quantity or quality of [Defendant's]  products, or
> prevented [Defendant] from pursuing its entry into the market.

(citations omitted).  Similarly, IGC failed to allege facts showing that its litigation

costs had any effect on competition.[5]

---

[5]    Although older cases suggest in dicta that legal fees may constitute antitrust injury, *see e.g. Hangards, Inc.* v. *Ethicon, Inc.*, 601 F.2d 986, 997 (9th Cir. 1979), the more recent cases are to the contrary.  And, current Supreme Court law requires the injury to have affected competition, not just competitors.  *See Brunswick*, 429 U.S. at 489.

Making much of the fact that the above cases, cited in Catch Curve's Motion to Dismiss, are unreported, IGC in turn cites a magistrate's Report and Recommendation in a single unreported case to support its apparent position that a plaintiff need not plead an antitrust injury with any specificity, in direct conflict with Supreme Court precedent.  Indeed, IGC turns a standing argument into an excuse for failing to plead injury, citing *Anchor Wall Systems, Inc.* v. *Rockwood Retaining Walls, Inc.*, 2007 WL 4465195, at *10 (D. Minn. Dec. 18, 2007) as its only support.  (Response at 19.)  Merely stating that the imposition or threat of a lawsuit, accompanied by the demand for royalties, can constitute an antitrust injury would make any honest attempt to enforce a patent subject to the Sherman Act. More is required.  *See Abbott Labs.* v. *Brennan*, 952 F.2d 1346, 1354 (Fed. Cir. 1991) (affirming dismissal of antitrust counterclaims when defendant failed to plead facts sufficient to show antitrust injury, merely presuming market power from the presence of a patent).

IGC's remaining claims of injury, mostly generic claims stemming from Catch Curve's demand for royalties from other infringers and efforts to require competitors to abide by patent laws,[6] are not sufficiently pled to constitute an "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent." *Brunswick Corp.* v. *Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Contrary to the standard established by *Atlantic Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 344 (1990), IGC has not alleged any *facts* indicating harm to the market.[7]

IGC asserts that j2 and Catch Curve's alleged sham litigation has led to reduced competition, but without alleging any facts that would make that

---

[6]     One of the supposed injuries to competition alleged by IGC is Catch Curve's lawsuit for patent infringement against Venali, Inc. (Countercl. ¶ 101.) As the court in that case concluded that the suit was proper, *Catch Curve, Inc.* v. *Venali, Inc.*, Case No. 05-4820-DDP (C.D. Cal. Nov. 3, 2008) (Exhibit A to Motion), this allegation cannot possibly represent an antitrust injury.

[7]     IGC's Response (at 22-23) suggests that Catch Curve's attempts to enforce its patents against IGC's reseller, Meixler Technologies, Inc. ("MTI"), caused it competitive harm, but there is no allegation in the Counterclaim that MTI stopped dealing with IGC, much less that it did so as a result of j2's actions. Nor can IGC plead antitrust injury with speculation that Catch Curve's enforcement efforts against MTI have "created an environment of fear in the marketplace whereby potential resellers *may* be reluctant to deal with IGC." (Countercl. ¶ 216) (emphasis added). There are no factual allegations that would support this speculation. In any case, such an alleged injury against a single competitor does not translate into antitrust injury affecting competition, which IGC has failed to plead.

assertion plausible.[8]  IGC claims that the litigation resulted in j2 receiving

increased market share; however, no facts are alleged that demonstrate such a

change, much less that any such change is due to litigation.  (Countercl. ¶¶ 35-36.)

IGC lists multiple companies that j2 or Catch Curve has sued for patent

infringement, but cannot identify one competitor that went out of business or was

competitively affected as a result.[9]  IGC claims that competitors have left the

market and others have failed to enter as a result of litigation with j2, but, again,

offers not a single example or other supporting factual allegation.  IGC indicates

that several competitors have consolidated with j2, but gives no indication of what

their market share was or how it changed (much less harmed) competition within

the market.  (*Id.* ¶ 40.)

Finally, IGC has not plausibly alleged any harm to consumers

resulting from the alleged anticompetitive conduct.  IGC alleges that j2 has raised

its prices, (*id.* ¶ 52), but there is no indication that any prices are supra-competitive

or unfair in any way, or that the market is unable to offer – or does not offer –

---

[8]     IGC references additional purported evidence raised for the first time in its
Response (at 16), but cannot point to factual allegations actually in the
Counterclaims to support its deficient claims.  IGC cannot amend its pleadings in
its opposition to a motion to dismiss.

[9]     IGC alleges that Vera Cruz Marketing, a reseller of another company's
products, is "in the process of shutting down its Fax to email business," but does
not allege that the provider of those products has ceased to compete in the market.
(Countercl. ¶¶ 117-120.)

alternatives to j2's services.  IGC offers no factual allegation that the quality of the services in the market has suffered.  Absent an allegation demonstrating an adverse impact on competition, there can be no plausible antitrust injury and no possible violation of the antitrust laws.

### B.   IGC's *Walker Process* Allegations Do Not Exempt It From the Antitrust Injury Requirement.

IGC seeks to overcome the deficiencies in its Counterclaim by directing the Court's attention to its unfounded *Walker Process* claims, suggesting that merely by asserting a *Walker Process* claim, IGC can avoid pleading an antitrust injury.  (Response at 20-21.)  That is not the law.  The sham litigation standard set forth in *P.R.E.* does not form a separate antitrust claim; rather, it clarifies that when a party pursues "objectively baseless" litigation, it may not benefit from *Noerr-Pennington* immunity and may be subject to antitrust liability. *P.R.E.*, 508 U.S. at 51.  Similarly, *Walker Process* provides a legal ground on which a patentee may be stripped of immunity, rather than an affirmative basis for relief.  *See Abbott Labs.*, 432 F. Supp. 2d at 427.  If the antitrust immunity veil is pierced and the court finds that the patent infringement litigation is subject to antitrust claims, the antitrust liability lies in antitrust claims, not in the *P.R.E.* or *Walker Process* standards.  *See Handgards, Inc.* v. *Ethicon, Inc.*, 601 F.2d at 993 n.11 ("[T]he absence of an immunity does not create an antitrust offense.  The fact that defendant's conduct is not immune from antitrust scrutiny does not satisfy the

16

plaintiff's burden of proving the usual elements of an antitrust complaint.");
*P.R.E.*, 508 U.S. at 61 ("Of course, even a plaintiff who defeats the defendant's
claim to *Noerr* immunity by demonstrating the both the objective and the
subjective components of a sham must still prove a substantive antitrust
violation.").

   IGC's confusion is evidenced in its discussion of *Hydril Co. LP* v.
*Grant Prideco LP*, 474 F.3d 1344, 1350 (Fed. Cir. 2007).  (Response at 21-23.)  In
that case, the Federal Circuit did not consider the argument that the plaintiff had
failed to allege antitrust injury, because the district court did not rely on that
argument in dismissing the antitrust claim.  Instead, the passage quoted by IGC
concerns whether the plaintiff had alleged the minimum level of enforcement
necessary to give rise to a *Walker Process* claim.  The Court remanded to the
district court for additional consideration of alternative justifications for dismissal.
474 F.3d at 1351 ("In the present case, we decline to consider these additional
grounds for affirmance because we conclude that they would be more
appropriately addressed in the first instance by the district court.").

   Further, IGC's suggestion that it could suffer future injury were it
found to infringe the AudioFax patents defies logic.  (Response at 21.)  Any
finding of infringement would necessarily mean that the Court had rejected IGC's
contentions regarding the validity of the Patents-in-Suit and Catch Curve's

purported fraud on the patent office, and by definition, j2 and Catch Curve's position cannot be "objectively baseless" if it is successful.  *See e.g., P.R.E.*, 508 U.S. at 61 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham.").

## V.      IGC's Contract Claim Is Not Well Pled.

IGC's Response makes little effort to defend its breach of contract claim, ignoring j2's arguments that IGC failed to allege any "claim" that could be covered by the alleged warranty.  (Mot. at 26-27.)  Rather than addressing these fatal deficiencies, IGC asserts that the Court is not allowed to look at the contract that is the basis for IGC's claim, because it was not authenticated.  (Response at 11-12, 30.)  To be clear, IGC does *not* dispute the authenticity of the contract submitted by j2 and Catch Curve with the Motion to Dismiss.  IGC's argument is limited to a technicality—that j2 and Catch Curve attached an indisputably authentic contract (specifically referenced in the Counterclaims) to their brief instead of to an attorney declaration.  There is no doubt that j2 submitted the correct contract, which IGC confirms by not suggesting otherwise.  As such, *Tierney* v. *Vahle*, 304 F.3d 734, 739 (7th Cir. 2002), is inapposite.  IGC's discussion of evidentiary rules likewise is inapposite.  The contract is properly considered part of the pleadings, not evidence.

IGC also argues that its claims are not premised on a "secret plan" of j2 to sue IGC in the future, but IGC alleged exactly that.  (Countercl. ¶ 239 ("At the time the [License] was issued, jFax . . . was well aware of both the existence of [the AudioFAX] patents and that a lawsuit would be brought against IGC.").)  By now disavowing that allegation, IGC is effectively admitting that there was no "claim" of which j2 was aware when it executed the license agreement.  (License § 6.1.)

Moreover, the contract claim is precluded by the statute of limitations as a matter of law.  Under Georgia law, the License Agreement is governed by the UCC.  *See Richard Haney Ford, Inc.* v. *Ford Dealer Computer Servs*., 461 S.E.2d 282, 283 (Ga. Ct. App. 1995).  IGC suggests that the UCC does not apply, but does not make any argument or cite any authority in support.  (Response at 31-32.)  Nor does IGC dispute that the statute of limitations begins running when the breach occurs, regardless of the injured party's knowledge.  GA. CODE ANN. § 11-2-725.  As a matter of law, a breach of warranty on a sale of goods (such as IGC's sale of software to j2 pursuant to the software license at issue here) occurs when delivery is tendered.  *Id*.  IGC asserts that when delivery occurred is an issue of fact, but the Counterclaim alleges that the license was executed in 2000, (Countercl. ¶ 236), for use in 2000 (*id*. ¶ 233).  IGC points to no allegation that delivery occurred after 2000.  And, IGC expressly alleges that the warranty was breached in 2000 when

the license was executed.  (Countercl. ¶ 242 ("At the time j2 executed the Software

License, it was aware of the AudioFax Patents.").)  There is no issue of fact.

## <u>CONCLUSION</u>

For the foregoing reasons, Catch Curve and j2 respectfully request

that Counts IV, V and VII of IGC's Counterclaim be dismissed.

Respectfully submitted, this 8th day of October, 2010.

/s/ Edward E. Johnson
Robert A. Sacks (*pro hac vice*)
Brian R. England (*pro hac vice*)
Edward E. Johnson (*pro hac vice*)
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 712-6600
Facsimile:  (310) 712-8800

Scott A. Horstemeyer (SBN 367836)
Melissa Rhoden (SBN 143160)
Dan R. Gresham (SBN 310280)
Cynthia J. Lee (SBN 442999)
**THOMAS, KAYDEN, HORSTEMEYER
& RISLEY, L.L.P.**
600 Galleria Parkway, Suite 1500
Atlanta, Georgia 30339
Telephone:(770) 933-9500
Facsimile: (770) 951-0933

Attorneys for Counterclaim Defendants
Catch Curve, Inc. and j2 Global
Communications, Inc.