IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CATCH CURVE, INC., | ) | |
| | ) | |
| Plaintiff and Counterclaim Defendant, | ) ) | |
| | ) | No. 1:06-CV-2199-AT |
| v. | ) | |
| | ) | |
| INTEGRATED GLOBAL CONCEPTS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant and Counterclaim Plaintiff. | ) ) | |
| | ) | |
| ------------------------ | ) | |
| | ) | |
| INTEGRATED GLOBAL CONCEPTS, INC., | ) | |
| | ) | |
| Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| J2 GLOBAL COMMUNICATIONS, INC., AUDIOFAX, INC., AUDIOFAX IP LLC, | ) ) | |
| | ) | |
| Added Counterclaim Defendants. | ) | |

**j2 GLOBAL, INC. AND CATCH CURVE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES DEMONSTRATING THAT THIS LAWSUIT WAS NOT OBJECTIVELY BASELESS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ...............................................................................................4

      A.    Catch Curve's Fax-to-Email Allegations....................................4

      B.    Catch Curve's Fax-to-Fax Allegations. ......................................7

ARGUMENT ...................................................................................................10

   I.     AS JUDGE PREGERSON DETERMINED AS A MATTER OF
        LAW, CATCH CURVE'S ASSERTION OF THE PATENTS-IN-
        SUIT AGAINST INTERNET FAX SERVICES BEFORE THE
        FEDERAL CIRCUIT RULING WAS NOT OBJECTIVELY
        BASELESS. .......................................................................................10

   II.    AFTER THE FEDERAL CIRCUIT RULING, CATCH CURVE'S
        CONTINUED PROSECUTION WAS NOT OBJECTIVELY
        BASELESS BECAUSE IGC'S WEBSITE CONTINUED TO
        ADVERTISE *CURRENT* FAX-TO-FAX FUNCTIONALITY. ........13

      A.    Catch Curve's Infringement Allegations Were Based On
              Claims Analysis By Its Counsel Based on IGC's Public
              Statements. ...........................................................................14

      B.    Catch Curve Proceeded Responsibly in Trying to Verify,
              and then Voluntarily Withdrawing, Its Claims.........................17

   III.   CATCH CURVE'S INCLUSION OF OTHER PATENTS IN ITS
        CONTENTIONS IS IRRELEVANT TO WHETHER THIS SUIT
        WAS OBJECTIVELY BASELESS...................................................18

   IV.   A "SERIES OF LAWSUITS" DOES NOT CREATE AN
        EXCEPTION TO THE PRE OBJECTIVELY BASELESS
        STANDARD. ....................................................................................22

CONCLUSION ................................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## FEDERAL CASES

*In re Androgel Antitrust Litig. (No. II)*,
  2012 U.S. Dist. LEXIS 140259 (N.D. Ga. Sept. 28, 2012)................................20

*Avery Dennison Corp.* v. *Acco Brands, Inc.*,
  2000 WL 986995 (C.D. Cal. Feb. 22, 2000) ......................................................4

*California Motor Transport Co.* v. *Trucking Unlimited*,
  404 U.S. 508 (1972)..........................................................................................23

*Catch Curve, Inc.* v. *Venali, Inc.*,
  No. CV 05-04820 DDP (AJWx) (C.D. Cal. Nov. 3, 2008)............2, 3, 11, 12, 25

*In re Circuit Breaker Litig.*,
  984 F.Supp. 1267 (C.D. Cal. 1997) ..................................................................24

*C.R. Bard, Inc.* v. *M3 Sys., Inc.*,
  157 F.3d 1340 (Fed. Cir. 1998) ..........................................................................1

*Gen-Probe, Inc.* v. *Amoco Corp. Inc.*,
  926 F. Supp. 948 (S.D.Cal.1996) ......................................................................24

*Globetrotter Software, Inc.* v. *Elan Computer Group, Inc.*,
  362 F.3d 1367 (Fed. Cir. 2004) ........................................................................22

*Kearney* v. *Foley & Lardner, LLP*,
  590 F.3d 638 (9th Cir. 2009) ............................................................................21

*Nobelpharma AB* v. *Implant Innovations, Inc.*,
  141 F.3d 1059 (Fed. Cir. 1998) ........................................................................22

*Organon Inc.* v. *Mylan Pharms., Inc.*,
  293 F. Supp. 2d 453 (D.N.J. 2003)....................................................................23

*PrimeTime24 Joint Venture* v. *Nat'l Broad. Co.*,
  219 F.3d 92 (2d Cir. 2000) ...................................................................22

*Professional Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993)..............................................................1, 2, 17, 20

*Q-Pharma, Inc.* v. *Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004) ................................................3, 15, 23

*In re Terazosin Hydrochloride Litig.*,
  335 F. Supp. 2d 1336 (S.D. Fla. 2004).......................................23, 25

*Travelers Express Co.* v. *Am. Express Integ. Payment Sys. Inc.*,
  80 F. Supp. 2d 1033 (D. Minn. 1999)................................................23

*USS-POSCO Indus.* v. *Contra Costa County Bldg. & Constr. Trades Council*,
  31 F.3d 800 (9th Cir. 1994) ..........................................................22, 24

*Whelan* v. *Abell*,
  48 F.3d 1247 (D.C. Cir. 1995).............................................................21

*White* v. *Lee*,
  227 F.3d 1214 (9th Cir. 2000) ...............................................................1

## PRELIMINARY STATEMENT

Plaintiff and Counterclaim Defendant Catch Curve, Inc. ("Catch Curve") and Counterclaim Defendant j2 Global, Inc. ("j2") respectfully submit this brief to answer the questions posed by the Court on October 26, 2012:

1)   Was the filing of this lawsuit objectively baseless?

2)   Was the continued prosecution of this lawsuit after the issuance of the Federal Circuit's decision in *Venali* in 2010 objectively baseless?

The answer to both questions is no.  The standard for piercing *Noerr-Pennington* immunity, well-established under binding Supreme Court and Federal Circuit precedents and to be decided by the Court in the first instance as a matter of law, is objective and extremely difficult to meet.  Catch Curve's infringement action is presumed to have been in good faith and protected by the *Noerr-Pennington* doctrine.  *C.R. Bard, Inc.* v. *M3 Sys., Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("the law recognizes a presumption that the assertion of a duly granted patent is made in good faith.").  That immunity is overcome only with "great reluctance."  *White* v. *Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000).  In *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Indus., Inc.*, 508 U.S. 49 (1993) ("*PRE*"), the Supreme Court held that a litigant seeking to overcome *Noerr-Pennington* immunity based on allegations of "sham" litigation must first prove

that the litigation was "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *PRE*, 508 U.S. at 60-61.  Stated differently, to meet this high bar, one must prove that no reasonable litigant could have believed that it had probable cause to institute the litigation.  Probable cause, an absolute defense, requires merely that a reasonable patent owner in Catch Curve and j2's position "could have believed that it had some chance of winning." *PRE*, 508 U.S. at 64-65.  "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr* and an antitrust claim premised on the sham exception must fail." *PRE*, 508 U.S. at 60.  Moreover, "a court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation." *Id.* at 60 n.5.

This high standard cannot be met here.  *First*, Catch Curve's claims were not objectively baseless when initially filed.  IGC practically concedes as much, devoting only two pages to the question.  The claims were based on detailed claim charts, expert opinions, and a fax-to-email construction that another District Court, with years of experience dealing with these same patents and substantially identical antitrust claims, found objectively reasonable.  In *Catch Curve, Inc,* v. *Venali, Inc.*, No. CV 05-04820 DDP (AJWx) (C.D. Cal.) (the "*Venali* Action"), the

Hon. Dean D. Pregerson concluded, as a matter of law, that Catch Curve's assertion of its patents against Venali's fax-to-email service "was based on probable cause, and therefore was not objectively baseless." (Declaration of Edward E. Johnson ("Johnson Decl.") Ex. A, "*Venali* Order" at 10). Judge Pregerson's decision, while not technically binding on this Court, was made as a matter of law, on a complete record, based on substantially identical claim construction and legal arguments.[1] This Court should follow the *Venali* Court.

   *Second*, Catch Curve's decision, after the Federal Circuit ruled, to continue asserting against IGC's fax-to-fax service a small subset of the claims originally asserted was not objectively baseless. IGC's argument that the narrowed claims were objectively baseless essentially boils down to a single contention, that Catch Curve somehow improperly relied on IGC's own public statements that unequivocally state that IGC's service contains fax-to-fax capability, and should have instead assumed that twelve-year-old documents more accurately described IGC's current system. Under binding Federal Circuit law, however, IGC's public statements provided probable cause to pursue these claims. *See Q-Pharma, Inc.* v.

---

[1] The first sentence of IGC's Opposition to j2's Motion to Dismiss IGC's Counterclaims described the *Venali* Action as "a very similar case." (Dkt. No. 94.) IGC implored the Court to "follow Judge Pregerson's well-reasoned rulings" in light of the similarities between the cases (*id.*), and even attached the *Markman* ruling in the *Venali* Action to its Amended Counterclaim (Dkt. No. 85).

*Andrew Jergens Co.*, 360 F.3d 1295, 1305 (Fed. Cir. 2004).  Furthermore, when IGC confirmed that its website was inaccurate, Catch Curve immediately voluntarily dismissed its claims (over IGC's opposition)—hardly the action of a "sham" litigant.

*Third*, IGC's efforts, like Venali's before it, to avoid the "objectively baseless" standard by claiming it does not apply to a "series of lawsuits" is incorrect.  Neither the Federal Circuit nor the Eleventh Circuit has ever recognized such an exception to *Noerr-Pennington*, and those courts who have examined the issue have uniformly concluded that the *PRE* objectively baseless standard still applies.  This non-existent exception does not save IGC's claims.

These questions are ripe for decision by the Court now.  IGC has not pointed to any additional discovery that the Court must consider in applying an objective standard to Catch Curve's initiation and continuation of this suit.  As such, the Court should find that Catch Curve's suit was objectively reasonable. Doing so would effectively resolve all remaining claims in this matter.

## BACKGROUND

### A.    Catch Curve's Fax-to-Email Allegations.

Catch Curve, a wholly-owned subsidiary of j2, filed this action in 2006, alleging infringement of U.S Patent Nos. 4,994,926; 5,291,302; 5,459,584;

6,643,034 and 6,785,021 (collectively, the "Patents-in-Suit").  Catch Curve served

its original infringement contentions in September 2006.[2]  (Johnson Decl. Ex. B.)

Those contentions included a claim-by-claim and element-by-element analysis

showing that IGC infringes the Patents-in-Suit, based upon Catch Curve's asserted

claim construction at the time, which covered fax-to-email services like IGC's.

At the time Catch Curve sued IGC, the Patents-in-Suit had already

been extensively licensed.  The Patents were originally owned by AudioFax IP

LLC, which licensed them to many companies, including Sprint and AT&T.  Many

of those licenses were taken by companies offering fax-to-email services, including

j2 itself, which paid $1 million for a license in 2001.  In January 2005, j2 paid

nearly $2.5 million to purchase the Patents-in-Suit and assigned them to Catch

Curve to continue the AudioFax licensing program.  By the end of 2007, 60

companies had taken licenses to the Patents-in-Suit.

In connection with its licensing program, Catch Curve brought

lawsuits in this District and in the Central District of California.  On May 11, 2007,

Judge Pregerson issued a *Markman* ruling in the *Venali* Action in which he

construed several terms of the Patents-in-Suit.  The central issue was the Court's

---

[2] For reasons not relevant here, Catch Curve re-filed its lawsuit due to a
technicality related to the Patent & Trademark Office issuing a Certificate of
Correction.  (Johnson Decl. ¶ 3.)

construction of the term "facsimile message."  The Patents-in-Suit teach a system with a "Store and Forward Facility" that receives fax messages via facsimile protocol and stores and retransmits those messages.  The central issue addressed by Judge Pregerson was whether the term "facsimile message" should be construed to require that the accused system not only receive messages via facsimile protocol, but also retransmit messages only using facsimile protocol.   (Declaration of John Neurauter ("Neurauter Decl."), Dkt. No. 187, Ex. 15 at 17-20.)  The Court adopted Venali's position, holding that faxes must be both sent and received via facsimile protocol.  (*Id.* at 12-17.)

Based on his *Markman* ruling, Judge Pregerson granted Venali summary judgment on August 12, 2008.  Shortly thereafter, Catch Curve and j2 moved for summary judgment on Venali's antitrust claims, which, like IGC's claims here, alleged that j2 had monopolized the fax-to-email market using "sham" litigation.  On November 3, 2008, Judge Pregerson granted j2's motion on the ground that Catch Curve's claims were not objectively baseless, specifically finding that Catch Curve had probable cause to assert the Patents-in-Suit based on its claim construction theory that the patents covered fax-to-email services.

(*Venali* Order, Johnson Decl. Ex. A.)[3]  Venali did not appeal.

Catch Curve appealed Judge Pregerson's summary judgment and *Markman* Orders.  Because it made little sense to move forward with this litigation until the Federal Circuit ruled, Catch Curve moved to stay this case.  The Court granted the motion over IGC's opposition.  (Dkt. Nos. 100, 106.)

The Federal Circuit affirmed on January 22, 2010, holding that the scope of the Patents-in-Suit is "limited to systems that are configured to forward a fax message from storage in fax protocol over a switched telephone network." (Neurauter Decl. Ex. 19 at 11.)  In other words, to infringe, a system must have fax-to-fax capability—the capability to receive faxes over the telephone network and then forward those messages over the telephone network using facsimile protocol.  When the Federal Circuit affirmed Judge Pregerson's claim construction, Catch Curve dropped its fax-to-email allegations in this and every other case then pending.

### B.   <u>Catch Curve's Fax-to-Fax Allegations.</u>

Catch Curve did not drop this case, however, because IGC's website described how a user can forward a received fax to a traditional fax machine.

---

[3] j2's Motion for Summary Judgment and Reply in the *Venali* Action are attached as Exs. C-D.  (Venali filed its Opposition under seal with no public version.)

(Johnson Decl. Exs. E-F.)  This functionality, described on IGC's website, indicated that IGC's service was infringing under the Federal Circuit ruling. (Neurauter Decl. Ex. 19 at 11.)  Nevertheless, Catch Curve offered to drop its claims in light of the limited damages at issue.  (Johnson Decl. Ex. G.)  Catch Curve even offered to dismiss its claims with prejudice while permitting IGC to maintain its antitrust claims, provided that IGC dismiss its mirror-image declaratory judgment claims, but IGC refused.  (*Id*. Exs. H-I.)

The stay was lifted in June 2010.  Catch Curve timely served amended infringement contentions on November 14, 2011.  (Neurauter Decl. Ex. 6.) Consistent with the Federal Circuit's decision and with its earlier statements to IGC, Catch Curve dropped all allegations regarding IGC's fax-to-email service. (*Id*.)  It limited its case instead to IGC's fax-to-fax service, basing its contentions upon publicly-available information from IGC's website.  (*Id*.)  For example, the infringement contentions specify how IGC's website shows infringement of Claim 40 of the 6,785,021 patent by pointing out that, according to IGC's advertisements, a MaxEmail user can "Press 2 to forward a fax to another fax number."  (*Id.* at A-5; Johnson Decl. Ex. F.)

Despite the clear statements on its website touting fax-to-fax capability, IGC repeatedly denied having that capability.  Catch Curve asked IGC

-8-

to substantiate its denial, so that Catch Curve could dismiss the claim if IGC actually did not have that functionality.  (*See, e.g.*, Johnson Decl. Ex. J.)  IGC again and again refused to do so; for example, IGC stated in one letter that it did not have the capacity to transmit a received fax message to a fax machine, but then stated in the same letter that a small portion of its customers "elect to receive copies of their messages via traditional fax machines."  (*Id*. Ex. K.)

Unable to gain confirmation informally, Catch Curve resorted to serving interrogatories focused on whether IGC has fax-to-fax capability.  (*Id*. Ex. L.)  IGC again obfuscated.  (*Id*. Ex. M.)  For example, Catch Curve asked:

> State whether it has ever been possible for a customer of IGC to forward a fax message, received by the MaxEmail service, to a destination other than the hardware for the MaxEmail service over the public switched telephone network by using a telephone to enter instructions for forwarding the fax message.

(*Id*. Ex. L at 1.)  Rather than simply stating "yes" or "no," IGC responded with boilerplate objections and directed j2 to documents, most of which are at least twelve years old.  (*Id*. Ex. M at 7.)  Even if these documents somehow showed whether IGC had fax-to-fax capability in 1999, they are not relevant to whether IGC has fax-to-fax capability *now* as its website indicates.  Catch Curve followed up and asked IGC to clarify its responses.  (*Id*. Ex. N.)  In response, IGC finally provided a clear statement that its verified interrogatory responses were intended to

indicate that IGC has never offered fax-to-fax capability.  (*Id*. Ex. O.)  Upon

receiving confirmation regarding the fax-to-fax service from IGC, Catch Curve

promptly indicated that it would dismiss its claims with prejudice.  (*Id*. Ex. P.)

Catch Curve asked IGC to stipulate to the dismissal; IGC refused

unless j2 stipulated to an unreasonable *global* covenant not to sue on *any* Catch

Curve or j2 patent, whether asserted in this case or not.  (*Id*. Exs. Q, R.)  As a

result, Catch Curve was forced to move to dismiss its own claims with prejudice

and to dismiss IGC's mirror-image declaratory judgment claims.  The Court

granted that motion on July 27, 2012.

## **ARGUMENT**

**I.      As Judge Pregerson Determined as a Matter of Law, Catch Curve's
         Assertion of the Patents-in-Suit Against Internet Fax Services Before
         the Federal Circuit Ruling Was Not Objectively Baseless.**

In its brief, IGC all but concedes that it cannot prove Catch Curve's

claims prior to the Federal Circuit ruling were objectively baseless.  The fax-to-

email allegations are not even addressed until page 19 of IGC's brief, and then IGC

makes the puzzling claim that j2 has never charged IGC with infringement under

this theory.  (IGC Br. at 19, n.5.)  That statement is simply wrong.  Catch Curve

expressly charged IGC with infringement of the Patents-in-Suit under the fax-to-

email theory until shortly after the Federal Circuit ruling.  (Johnson Decl. Exs. B,

G.)  When IGC finally turns to the merits of the Court's first question, it merely

recycles the very same arguments rejected in the *Venali* Action as a matter of law.

The record and decision in the *Venali* Action establish that Judge Pregerson's

decision was correct and should be adopted here.

        Catch Curve's patent licensing program, based on the Patents-in-Suit,

achieved great success before the *Venali* Federal Circuit ruling.  Approximately 60

parties, including those with both fax-to-email and fax-to-fax products, purchased

licenses for substantial sums, including j2 itself, which paid $1 million for a license

before purchasing the AudioFax Patents.  (*Id.* Ex. C.)  Thus, although Judge

Pregerson's *Markman* order limited the AudioFax Patents to fax-to-fax

technologies, he also confirmed that cases brought under Catch Curve's licensing

program before the Federal Circuit ruling were brought in good faith.  (*Venali*

Order at 17-20.)  He rejected Venali's antitrust claims, which addressed the same

question as in this case:  whether the filing of this lawsuit was objectively baseless

in light of Catch Curve's undisputed success in licensing the Patents-in-Suit.

        The answer is an unqualified no.  Judge Pregerson found that the

objectively baseless prong ended the *PRE* inquiry, holding that "the institution of

litigation prior to [the *Venali* Claim Construction] was based on probable cause,

and therefore was not objectively baseless."  (*Venali* Order at 10.)  Most

importantly, "the settlements and licenses that resulted from [Catch Curve's] prior disputes—including the licenses to Internet companies that AudioFax had before j2 purchased the patents—support the Court's finding that Catch Curve had at least a "reasonable belief that there [was] a chance [its] claim [would] be held valid upon adjudication." *Id.* at 10-11.

Judge Pregerson also held that "[d]uring the claim construction process, Catch Curve offered reasonable arguments in support of its proposed constructions that were based on intrinsic evidence, claim construction principles, and expert testimony." He noted it is common for patentees to "assert that their patents cover newer technology, such as the fax-to-email systems at issue here." *Id.* Therefore, "Catch Curve's patent infringement actions, though unsuccessful, were not 'objectively baseless'" as a "matter of law." (*Venali* Order at 10-11.[4])

Judge Pregerson's analysis is equally applicable here. IGC has accurately told the Court that the *Venali* Action was "a very similar case," despite IGC's revisionist attempt to now claim that the *Venali* Order is inapposite. (*Compare* Dkt. No. 94 at 2 *with* IGC Br. at 20.) Like IGC, Venali offered a service enabling users to receive faxes as email attachments and to send faxes that

_____

[4] In addition to the fact that j2 and Catch Curve are protected by the *Noerr-Pennington* Doctrine, IGC's counterclaims fail for additional reasons, including the lack of cognizable antitrust injury and the lack of a cognizable market.

originate as emails.  In both this action (at the time it was filed) and the *Venali*

Action, Catch Curve contended that Internet fax services like those offered by IGC

and Venali infringe the Patents-in-Suit based upon the claim construction that

Judge Pregerson disagreed with, but found reasonable as a matter of law.  IGC's

perfunctory argument fails to point to any error in Judge Pregerson's analysis or

any difference in the cases that would compel a different result.  Thus, the Court

should rule that Catch Curve's initial allegations were not objectively baseless.

**II.   After the Federal Circuit Ruling, Catch Curve's Continued Prosecution Was Not Objectively Baseless Because IGC's Website Continued to Advertise *Current* Fax-to-Fax Functionality.**

Upon filing the Federal Circuit appeal, Catch Curve chose to stay this

action  rather than re-litigate the *Markman* issues in this Court.  When the Federal

Circuit affirmed Judge Pregerson's orders, Catch Curve altered its contentions in

this case to conform to the Federal Circuit's ruling, limiting its claims to the fax-to-

fax capability described on IGC's website.  (Johnson Decl. Exs. E-F.)  Indeed, this

capability is still described on the website today.  (*Id.*)

Catch Curve's infringement allegations under that theory were

objectively reasonable and supported by detailed claim analysis performed by

Catch Curve's counsel based upon IGC's own public statements.  Moreover, j2

continued trying to confirm that IGC had fax-to-fax capability, and voluntarily

-13-

dismissed its claims as soon IGC verified that it did not, further confirming the reasonableness of its approach to this litigation.

      **A.**     **Catch Curve's Infringement Allegations Were Based On Claims Analysis By Its Counsel Based on IGC's Public Statements.**

      Catch Curve served IGC with detailed infringement contentions in support of its fax-to-fax allegations.  These contentions, signed by experienced and distinguished counsel under Rule 11 and supported by extensive citations, span nearly 60 pages.  They include detailed analysis on a claim-by-claim, and often limitation-by-limitation, basis.  (*See* Neurauter Decl. Ex. 6.)  The analysis was based on IGC's description of its service on its public website, which, at all times relevant to this action, unequivocally stated that IGC's service offered its customers the ability to forward fax messages from their mailboxes to "another fax number"—*i.e.*, fax-to-fax.  (Johnson Decl. Ex. F.)  That description provided probable cause to assert that IGC had a fax-to-fax service that infringed under the Federal Circuit's claim construction.  Catch Curve's detailed claims analysis alone is sufficient to establish probable cause for Catch Curve's contentions.[5]  IGC fails

---

[5] Catch Curve respectfully invites the Court to review the detailed infringement contentions (Neurauter Decl. Ex. 6) provided to IGC in this matter.  A review of these detailed contentions, signed under Rule 11 by Catch Curve's counsel, will be sufficient to demonstrate probable cause to pursue these claims.  As such, *Noerr-Pennington* immunity attaches, and IGC's claim must be rejected.

to identify any specific deficiencies in these contentions, but makes two other
arguments, both of which lack merit.

      **1.**      **Catch Curve's Reliance on IGC's Website Was Reasonable.**

      IGC argues that it was improper for Catch Curve to rely on IGC's
marketing materials.  (IGC Br. at 11-12.)  But the Federal Circuit has specifically
disagreed, holding that a patentee has probable cause based on an infringer's public
statements, coupled with analysis of how those statements implicate the patent
claims.  *See Q-Pharma*, 360 F.3d at 1305 ("[A] reasonable litigant could—based
on [its] patent, its prosecution history, and [the accused's] advertising and labeling
statements [. . .]—expect to prevail on a claim alleging infringement.").

      Here, IGC publicly advertised a fax-to-fax capability.  Catch Curve's
infringement contentions carefully analyzed IGC's public statements, such as that a
MaxEmail user can "Press 2 to forward a fax to another fax number," which
infringes U.S. Patent No. 6,785,021. (Neurauter Decl. Ex. 6 at A-5.)  As in *Q-
Pharma*, Catch Curve's careful analysis based on IGC's website provided probable
cause to continue its fax-to-fax case.  360 F.3d at 1305.

      IGC repeatedly asserts that instead of IGC's current website, Catch
Curve should have looked to documents dating to 2000 to learn how IGC's system
works now.  (IGC Br. at 7-12.)  Even assuming *arguendo* that the documents show

what IGC claims they do, Catch Curve had no reason to believe that IGC, a

technology company, would leave its system unchanged for more than a decade.

Certainly Catch Curve was not *required*—at the risk of giving up its *Noerr-*

*Pennington* immunity—to assume that IGC's system was described more

accurately by 12-year-old documents than by IGC's own *current* website.

**2.      Catch Curve's Contentions Were Consistent with the Federal Circuit Decision.**

IGC also asserts that Catch Curve's infringement theory is

inconsistent with the Federal Circuit's decision.  (IGC Br. at 11-13.)  But Catch

Curve's infringement contentions are based upon the correct (and certainly an

objectively reasonable) reading of the Federal Circuit decision.  The Federal

Circuit held that the AudioFax Patents are "limited to systems that are configured

to forward a fax message from storage in fax protocol over a switched telephone

network."  (Neurauter Decl. Ex. 19 at 11.)  Thus, under the Federal Circuit ruling,

the Patents can be infringed by a service that receives a facsimile message via

facsimile protocol, converts that message into a digital format for storage, but then

converts that message back into a faxable format and sends the facsimile message

to the recipient over the PSTN via facsimile protocol.  (*Id.*)  Because the Venali

system lacked the capability to send the fax from the storage, neither Judge

Pregerson nor the Federal Circuit had any occasion to consider whether such a

-16-

service would be infringing.  But, importantly, Catch Curve's contentions were entirely consistent with the Federal Circuit's construction of the term "facsimile message" and its discussion of the scope of the Patents-in-Suit.  *Id.*  Catch Curve's nearly 60 pages of detailed infringement contentions provided significantly more than enough support to establish probable cause, or a belief that it "had some chance of winning."  *PRE*, 508 U.S. at 64-65.

### B.     Catch Curve Proceeded Responsibly in Trying to Verify, and then Voluntarily Withdrawing, Its Claims.

When IGC asserted that it did not have fax-to-fax capability, Catch Curve spent months trying to verify that assertion in the face of IGC's obfuscation. *See supra* at 8-10.  The information that IGC did provide was inconsistent—IGC stated that it does not have the capacity to transmit a received fax message to a fax machine, but then stated that some of its customers "elect to receive copies of their messages via traditional fax machines," which indicates fax-to-fax capability. (Johnson Decl. Ex. K.)  Catch Curve then served interrogatories, but IGC's responses simply directed j2 to documents, which were at least twelve years old.

When Catch Curve finally got confirmation that IGC did not have fax-to-fax capability, it immediately took steps to dismiss its claims with prejudice, only to meet resistance because IGC would not agree to the dismissal without unreasonable conditions.  (*Id.* Ex. R.)  As such, Catch Curve was forced to dismiss

-17-

its own claims with prejudice via an opposed motion.[6]

### III.   Catch Curve's Inclusion of Other Patents in Its Contentions Is Irrelevant to Whether This Suit Was Objectively Baseless.

The focus of IGC's Brief is not on the two questions the Court asked, but rather on the assertion that because Catch Curve included U.S. Patent Nos. 7,365,884 and 7,525,691 (the "Continuation Patents") in its amended infringement contentions without first moving to amend the complaint, Catch Curve could not prevail and therefore had no expectation of success.  (IGC Br. at 5-6.)  This argument is a sideshow and IGC's focus on it merely underscores how weak its claim is.

*First*, IGC's argument makes no sense.  IGC concedes that "j2 never filed a lawsuit alleging that IGC made or used any product or device that infringed the [Continuation Patents]."  (*Id.* at 6.)  Therefore, there could be no objectively baseless lawsuit based on the Continuation Patents—there are no claims in the complaint against IGC asserting the Continuation Patents.[7]  IGC cannot have it

---

[6] In analyzing IGC's claims that j2 has acted in bad faith, the Court should consider that the Court stayed this action pending the Federal Circuit decision *over IGC's objection*, and dismissed Catch Curve's claims, with prejudice and on its request, also *over IGC's objection*.  A company earnestly looking to avoid unnecessary litigation and attorney's fees would not take such patently unreasonable positions.

[7] If IGC truly believed they were in this suit and therefore are objectively baseless, it could have moved to strike these contentions.  It did not do so.

both ways—either the claims of the Continuation Patents are part of the suit and

supported by the probable cause detailed in the infringement contentions, or they

are not part of the suit and could not have caused IGC any injury, much less

cognizable antitrust injury.  Either way, IGC's claims fail.

     *Second*, IGC grossly mischaracterizes the record.  Catch Curve first

served infringement contentions back in 2006 based on the fax-to-email

construction of the Patents-in-Suit, well before the *Venali* Federal Circuit ruling.

(Johnson Decl. Ex. B.)  After the stay in this case was lifted in 2011, Catch Curve

served amended infringement contentions based on the post-*Venali* fax-to-fax

construction.  (Neurauter Decl. Ex. 6.)  These infringement contentions dropped

four out of the five patents specified in the 2006 contentions of the Patents-in-Suit.[8]

(*Id.*)  Furthermore, for the remaining patent (No. 6,785,021), Catch Curve dropped

27 patent claims.  (*Compare id.* with Johnson Decl. Ex. B.)

     Catch Curve also added claims from the Continuation Patents.  But

there was nothing nefarious about doing so—they were included to provide IGC

with notice of the possible claims stemming from the complete scope of the patent

family, to provide a basis for Catch Curve to amend the complaint down the road if

---

[8] The patents not included in the amended infringement contentions are Nos.:
4,994,926; 5,291,302; 5,459,584; and 6,643,034.

needed.  Taken as a whole, the new infringement contentions reflected Catch

Curve's attempt to narrow the case by dropping patents in light of the Federal

Circuit ruling, and also provide notice to IGC for Catch Curve's full fax-to-fax

case.  If anything, dropping four patents and 27 patent claims from the amended

infringement contentions shows that Catch Curve is not a vexatious litigant.

   *Third*, even assuming these infringement contentions were improper,

that is at most a procedural issue.  IGC's complaint, at bottom, is that Catch Curve

included the Continuation Patents in its contentions before moving to formally

amend the complaint.  That is a procedural issue that should have been raised in a

motion to strike the contentions if IGC believed it was prejudiced.  It does not

relate to the merits of whether Catch Curve had probable cause to prosecute the

claims in this suit.  The *PRE* standard evaluates whether a claim is frivolous on its

*merits*, *PRE*, 508 U.S. at 60-61, not whether the plaintiff at some point in the

litigation made a procedural mistake.  *See In re Androgel Antitrust Litig. (No. II)*,

2012 U.S. Dist. LEXIS 140259, at *29 (N.D. Ga. Sept. 28, 2012) ("[B]ecause the

[objective baselessness] test is an objective one," procedural issues are not

relevant).

   *Finally*, IGC mischaracterizes an accurate statement by j2's counsel to

the Court.  (IGC Br. at 5.)  j2's counsel accurately informed the Court that by

-20-

including the Continuation Patents in its amended infringement contentions, Catch Curve had intended to provide as complete a scope of the alleged infringement as possible, rather than to add new claims to the lawsuit, *i.e.*, not to add a new accused service.  That statement is accurate, consistent with Catch Curve's position now as before, and neither intended nor designed to mislead the Court in any way.

Moreover, there is no case support whatsoever for IGC's contention that a factually-accurate statement to the Court somehow renders an action objectively baseless.  The cases cited by IGC involve egregious conduct completely unlike anything here.  *Kearney* v. *Foley & Lardner, LLP*, 590 F.3d 638, 642-43, 648 (9th Cir. 2009) concerned a party's intentional concealment of a report central to the dispute from the judge, jury, and counterparty in a previous lawsuit. In *Whelan* v. *Abell*, 48 F.3d 1247, 1255 (D.C. Cir. 1995), the Court addressed whether it was appropriate for a district court to rely on an order to show cause from the Maryland Securities Commissioner as a basis for collaterally estopping the plaintiff from showing the fraudulent character of the defendants' deliberate lies, which would have implicated the sham litigation exception.  Neither case is remotely applicable to j2's counsel's factually-accurate statement to the Court.[9]

---

[9] IGC also suggests that Catch Curve committed a fraud upon the Court by signing the amended infringement contentions that included the Continuation Patents, (IGC Br. at 18.), but points to no part of the contentions as false or misleading.

-21-

IV.   **A "Series of Lawsuits" Does Not Create an Exception to the *PRE* Objectively Baseless Standard.**

IGC, like Venali before it, attempts to avoid the high standard enunciated in *PRE* by claiming that under Second and Ninth Circuit law (which is inapplicable here), where an antitrust action is premised on a "series of lawsuits" rather than a single action, the objectively baseless prong of *PRE* is inapplicable.[10] (IGC Br. at 22-25 (citing *USS-POSCO Indus.* v. *Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800 (9th Cir. 1994) ("*USS-POSCO*"); *PrimeTime24 Joint Venture* v. *Nat'l Broad. Co.*, 219 F.3d 92 (2d Cir. 2000) ("*PrimeTime*"))).  This is not correct.  In *Nobelpharma AB* v. *Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998), the Court held that "whether conduct in procuring or enforcing a patent is sufficient to strip a patentee of its immunity from the antitrust laws is to be decided as a question of Federal Circuit law. *This conclusion applies equally to **all** antitrust claims premised on the bringing of a patent infringement suit.*"  (Emphasis added.)

The "series of lawsuits" exception to *Noerr-Pennington*, on which IGC relies, has never been accepted by the Federal Circuit.  Rather, the Federal

---

[10] IGC points to "cases that have been filed in the Central District of California" by j2 against other companies, but these are completely unrelated patents that have nothing to do with the Patents-in-Suit.  (IGC Br. at 23.)

Circuit applies the *PRE* test.  *See*, *e.g.*, *Globetrotter Software, Inc.* v. *Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) ("A plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were objectively baseless."); *Q-Pharma*, 360 F.3d at 1304-05 (same).  Courts have consistently held under Federal Circuit law that the *PRE* standard applies in cases alleging a series of sham litigations.  *See, e.g.*, *Travelers Express Co.* v. *Am. Express Integ. Payment Sys. Inc.*, 80 F. Supp. 2d 1033, 1042 (D. Minn. 1999) (citing *Glass Equip. Dev., Inc.* v. *Besten, Inc.*, 174 F.3d 1337, 1343-44 (Fed. Cir. 1999)); *In re Terazosin Hydrochloride Litig.*, 335 F. Supp. 2d 1336, 1366 n.26 (S.D. Fla. 2004); *Organon Inc.* v. *Mylan Pharms., Inc.*, 293 F. Supp. 2d 453, 462 (D.N.J. 2003).

Nonetheless, even applying Second and Ninth Circuit law would not save IGC's frivolous argument.  *PrimeTime* involved the serial and automatic filing of *thousands* of statutory challenges against a *single* competitor without regard to the merits, rendering it inapposite.  *See In re Terazosin*, 335 F. Supp 2d at 1367.  In *USS-POSCO*, the Ninth Circuit decided that *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. 508 (1972), rather than *PRE*, governs the *Noerr-Pennington* analysis in cases where the defendant is accused of bringing a series of cases.  *See* 31 F.3d at 810-11.  Contrary to IGC's argument, however, the

-23-

Ninth Circuit never suggested that the merits of the lawsuits are irrelevant.  Rather, the Court noted that "nothing in *California Motor Transport* retreated from the principle that unprotected activity must lack objective reasonableness . . . regardless of intent or purpose."  *Id.* at 810 (quoting *PRE* at 58.)  *USS-POSCO* merely stands for the proposition that "the fact that a small number in the series of lawsuits turn out not to be frivolous will not be fatal to a claim under *California Motor Transport*."  *Id*. at 811.  The series as a whole must still be objectively baseless.  *See PRE* at 58 ("We have described a sham as evidenced by repetitive lawsuits carrying the hallmark of *insubstantial* claims.") (emphasis in original).

This reading of *USS-POSCO* is confirmed by that court's application of its own holding—it found that 15 successful suits out of 29 filed were sufficient to demonstrate the suits had merit and thus *Noerr-Pennington* immunity applied. *See USS-POSCO*, 31 F.3d at 811.  Other courts in the Ninth Circuit have come to the same conclusion.  *Avery Dennison Corp.* v. *Acco Brands, Inc.*, 2000 WL 986995, at *22 (C.D. Cal. Feb. 22, 2000); *In re Circuit Breaker Litig.*, 984 F. Supp. 1267, 1273 (C.D. Cal. 1997); *Gen-Probe, Inc.* v. *Amoco Corp.*, 926 F. Supp. 948, 958-59 (S.D. Cal. 1996) (pattern of claims must be "baseless as a whole").

Further, as Judge Pregerson held, substantial success in a series of lawsuits is sufficient to overcome the "series of claims" exception to Noerr-

-24-

Pennington immunity.  (*Venali* Order at 18.)  IGC, like Venali, argues that "j2 has never obtained a single judgment on the merits in its favor" on the Patents-in-Suit. (IGC Br. at 22.)  Judge Pregerson rejected such a characterization because in light of Catch Curve's prior license agreements with other companies, Catch Curve had achieved "litigation success."  (*Venali* Order at 18.)  Indeed, "the Court cannot agree . . . that a plaintiff who has filed and receives the relief sought (e.g., monetary compensation, a change in conduct, etc.) could only have been deemed to have 'won' under *PRE* if it continued to litigate the case and received a favorable judgment from the court."  *Id.* (quoting *In re Terazosin*, 335 F. Supp. 2d at 1358 n.13).  Accordingly, Judge Pregerson concluded that Venali could not show that Catch Curve was filing lawsuits "without regard to the merits" as part of a pattern of "baseless, repetitive claims." *Id.* at 20.

## CONCLUSION

For the foregoing reasons, Catch Curve and j2 respectfully request that the Court find as a matter of law that this lawsuit was not objectively baseless.

Respectfully submitted, this 7th day of December, 2012.

/s/  Robert A. Sacks
Robert A. Sacks (*pro hac vice*)
Brian R. England (*pro hac vice*)
**SULLIVAN & CROMWELL, LLP**
1888 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800

Scott A. Horstemeyer (Ga. Bar No. 367836)
Dan R. Gresham (Ga. Bar No. 310280)
**THOMAS HORSTEMEYER, LLP**
400 Interstate North Parkway, Suite 1500
Atlanta, Georgia 30339
Telephone:  (770) 933-9500
Facsimile:  (770) 951-0933

*Attorneys for Plaintiff / Counterclaim Defendant Catch Curve, Inc. and Additional Counterclaim Defendant*