## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CATCH CURVE, INC., | ) | |
| | ) | |
| Plaintiff and Counterclaim Defendant, | ) | |
| | ) | No. 1:06-CV-02199 |
| v. | ) | Judge Amy Totenberg |
| | ) | |
| INTEGRATED GLOBAL CONCEPTS, INC., | ) | |
| | ) | Jury Trial Demanded |
| Defendant and Counterclaim Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| j2 GLOBAL COMMUNICATIONS, INC., | ) | |
| AUDIOFAX, INC., AND AUDIOFAX IP LLC, | ) | |
| | ) | |
| Added Counterclaim Defendants. | ) | |

## DEFENDANT/COUNTERCLAIM PLAINTIFF
## INTEGRATED GLOBAL CONCEPTS, INC.'S BRIEF IN SUPPORT OF
## REQUEST FOR DISCOVERY

TABLE OF CONTENTS

SECTION                                 HEADING                                      PAGE

SUMMARY ....................................................................................................1

ARGUMENT .................................................................................................2

I.   THE COURT SHOULD ADDRESS THE THRESHOLD QUESTION OF
     WHETHER j2 HAS SHOWN ANY "PETITIONING ACTIVITY"
     IMPLICATING THE NOERR-PENNINGTON DOCTRINE BEFORE
     BIFURCATING THE CASE OR LIMITING DISCOVERY .................................2

II.  j2 BEARS A HEAVY BURDEN IN LIMITING IGC'S DISCOVERY .....................3

III. IGC'S REQUESTED DISCOVERY IS REASONABLE .........................................4

     A.   IGC Is Entitled to Discovery Regarding Compliance
          With the Marking Statute by Catch Curve and Its
          Licensees ...................................................................................4

     B.   IGC Is Entitled to Discovery on Whether j2
          Reasonably Expected Success on the Merits and
          Whether the Patents Are Valid and Enforceable ................8

     C.   IGC's Requested Discovery on the Baselessness Issue ...............11

     D.   IGC is Entitled to Discovery Regarding Its § 285
          Claims .......................................................................................12

IV.  IT IS TOO SOON TO TELL WHETHER SUMMARY JUDGMENT IS
     APPROPRIATE FOR EITHER SIDE ............................................................14

CONCLUSION ...............................................................................................15

TABLE OF AUTHORITIES

PAGE

**Cases**

*Agfa Corp. v. Creo Products, Inc.,* 451 F.3d 1366 (Fed. Cir. 2006) ......................9

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.,* 6 F.3d 1523 (Fed. Cir. 1993)................6

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................ 14

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240 (9th Cir. 1982) ................................................................................2

*Digital Control, Inc. v. Charles Machine Works,* 437 F.3d 1309 (Fed. Cir. 2006)14

*Eon-Net, LP et al. v. Flagstar Bancorp.,* 653 F.3d 1314 (Fed. Cir. 2011) ........... 14

*Hydranautics v. Filmtec Corp.,* 70 F.3d 533 (9th Cir. 1995)............................... 10

*In re Delta/AirTran Baggage Fee Antitrust Litigation,* 846 F.Supp.2d 1335 (N.D.Ga. 2012) ....................................................................................3

*In re Sunstates Corp.,* 788 A.2d 530 (Del. Ch. 2001)......................................2

*MarcTec, LLC v. Johnson & Johnson,* 664 F.3d 907 (Fed. Cir. 2012)................. 13

*Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437 (Fed. Cir. 1998)................. 4, 7

*Noblepharma AB v. Implant Innovations,* 141 F.3d 1059 (Fed. Cir. 1998) ......... 10

*SNK Corp. of America v. Atlus Dream Ent. Co. Ltd.,* 188 F.R.D. 566 (N.D. Cal. 1999).................................................................................... 3, 4

*Soverain Software, LLC v. Amazon.com, Inc.,* 383 F.Supp.2d 904 (E.D. Tex. 2005) ................................................................................................ 6, 8

*Wallace v. Wood,* 752 A.2d 1175 (Del.Ch. 1999)...................................................2

*Williams v. The Art Inst. of Atlanta,* 2006 WL 3694649 (N.D. Ga. Sept. 1, 2006) ................................................................................................3

**Statutes**

35 U.S.C. § 103................................................................................9

35 U.S.C. § 154................................................................................5

35 U.S.C. § 283................................................................................5

35 U.S.C. § 284................................................................................5

35 U.S.C. § 285............................................................................... 12

35 U.S.C. § 287............................................................................ 4, 6

**Rules**

FED. R. CIV. P. 11 ........................................................................ 13

FED. R. CIV. P. 56 .................................................................... 14, 15

Local Patent Rule 4.1(c) ............................................................... 12

**Regulations**

37 C.F.R. § 1.56................................................................................9

NOW COMES the Defendant/Counterclaim Plaintiff, Integrated Global Concepts, Inc. (*"IGC"*), and for its Brief in Support of Request for Discovery, from Catch Curve, Inc. and j2 Global, Inc. ("*j2*"), respectfully states as follows:

### SUMMARY

Considering this case has been pending since 2006, it is masterful that j2 and Catch Curve have avoided providing IGC any meaningful discovery on the bases for the claims against IGC.  Over the past year, j2 has brought repeated discovery disputes before the Court seeking to avoid providing discovery to IGC and short-circuit IGC's ability to present its case.  Thus, regardless of the amount of time that has passed, this case is in virtually the same position it was when the Court denied j2's motion to dismiss in 2011 and ruled correctly that objective baselessness is a question of fact.  Without meaningful discovery, IGC cannot reasonably be expected to identify every witness or category of documents needed, but IGC makes a good faith attempt to do so below based on the publicly available information it has gathered.  Similarly, there is no way that this case can be fairly decided on summary judgment based solely on the current record before the Court. To the degree j2 believes it can show an absence of material fact in this case, it will be free to file a summary judgment motion at the appropriate time after discovery has taken place.  The Court should not entertain such a motion until

discovery is complete or unduly restrict IGC's ability to develop evidence to support its claims.

ARGUMENT

**I.    THE COURT SHOULD ADDRESS THE THRESHOLD QUESTION OF WHETHER j2 HAS SHOWN ANY "PETITIONING ACTIVITY" IMPLICATING THE *NOERR-PENNINGTON* DOCTRINE BEFORE BIFURCATING THE CASE OR LIMITING DISCOVERY**

It is axiomatic that to obtain the protections of the *Noerr-Pennington* doctrine, the party asserting immunity must be engaged in petitioning activity. However, under Delaware corporate law, where j2 is incorporated, Catch Curve's acts are not necessarily treated as those of j2:

> For the purposes of the corporation law, the act of one corporation is not regarded as the act of another merely because the first corporation is a subsidiary of the other, or because the two may be treated as part of a single economic enterprise for some other purpose.

*In re Sunstates Corp.*, 788 A.2d 530, 534 (Del. Ch. 2001) (*quoting Wallace v. Wood*, 752 A.2d 1175, 1184 (Del.Ch. 1999)).   As plaintiff, Catch Curve is the entity that "petitioned" the Court, not j2, the alleged monopolist.  As such, before pursuing what may be a costly and unnecessary inquiry into the *Noerr-Pennington* doctrine, the Court should require j2 to show protected petitioning activity before establishing a new form of "derivative" immunity for non-litigants.   *See, generally, Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1255 (9th Cir. 1982) ("If the activity is not genuine petitioning activity,

the antitrust laws are not suspended and continue to prohibit the violating activities.")

## II.   j2 AND CATCH CURVE BEAR A HEAVY BURDEN IN LIMITING IGC'S DISCOVERY

"The party resisting discovery has a 'heavy burden' of showing why discovery should be denied." *Williams v. The Art Inst. of Atlanta*, 2006 WL 3694649, at *3 (N.D. Ga. Sept. 1, 2006) (citations omitted).   There is a particularly strong preference for discovery in antitrust cases:  "where the proof is largely in the hands of alleged conspirators," antitrust plaintiffs must be given "'ample opportunity' for discovery." *In re Delta/AirTran Baggage Fee Antitrust Litigation*, 846 F.Supp.2d 1335, 1363 (N.D.Ga. 2012) (citations omitted).

 In this case, unlike *PRE*, where the predicate facts were not disputed, the predicate facts here are all disputed:

> Atlus's reliance on *Professional Real Estate* to preclude discovery of any information relating to Atlus's subjective intent is misplaced for several reasons.  First, in *Professional Real Estate*, the predicate facts of the underlying proceeding were undisputed such that a court could determine probable cause as a matter of law.   *Professional Real Estate*, 508 U.S. at 63, 113 S.Ct. 1920.  Here, in contrast, SNK is attempting to discover information about the predicate facts, which are not undisputed.  Second, the Supreme Court in *Professional Real Estate* denied plaintiff's request for further discovery because subjective intent was "rendered irrelevant" by the finding that probable cause existed. *Id.* at 65-66, 113 S.Ct. 1920.  Here, the present case is in the discovery phase.  Absent a finding that probable

cause exists, Atlus's state of mind is at issue and subjective intent is relevant.

*SNK Corp. of America v. Atlus Dream Ent. Co. Ltd.*, 188 F.R.D. at 573-74 (N.D. Cal. 1999). Given that there has been no showing of probable cause in this case, the Court should not be unduly restrictive in the discovery it permits. Even if the Court determines that evidence regarding j2 and Catch Curve's subjective intent or serial litigation cannot defeat *Noerr-Pennington* immunity, that determination does not necessarily mean that discovery on these topics is not "reasonably calculated to lead to the discovery of admissible evidence" regarding the objective baselessness inquiry.[1]

## III.   IGC'S REQUESTED DISCOVERY IS REASONABLE

### A.   IGC Is Entitled to Discovery Regarding Compliance With the Marking Statute by Catch Curve and Its Licensees

A patent holder cannot recover any damages or obtain any relief from a court unless and until it "marks" the patented item in compliance with the marking statute, or serves actual notice upon an alleged infringer (*e.g.,* by sending a warning letter or filing an infringement action). 35 U.S.C. § 287(a); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998) (patentee must give

---

[1]   For example, as the Court is aware, Catch Curve has sued dozens of companies on these patents. Any one of these companies could have produced documents that would lead an objective litigant to conclude that the patents were invalid or not infringed by companies like IGC, but under the Court's ruling, IGC may never see that information because it arguably exceeds the scope of j2's claims in this lawsuit.

notice so public knows an item is patented). IGC is entitled to take discovery on this issue because even if the Court believed that Catch Curve's Infringement Contentions had merit, the failure to comply with the marking statute objectively precludes Catch Curve from obtaining any relief against IGC, at least on U.S. Patents 7,365,884 and 7,525,691 (the " *'884 and '691 patents*").

In a patent infringement suit, "success on the merits" means obtaining an injunction preventing the accused infringer from making, using or selling the infringing product (35 U.S.C. § 283) and recovering lost profits or a reasonable royalty (35 U.S.C. § 284). Therefore, under *PRE*, the question before the Court is whether Catch Curve had a reasonable basis for believing that, on the strength of the AudioFAX Patents, the court would grant an injunction forcing MaxEmail off the market and awarding Catch Curve damages.

Importantly, by the time that the Infringement Contentions were served, all of the AudioFAX Patents had expired. 35 U.S.C. § 154(a)(2). Therefore, there was by definition no objective basis to afford Catch Curve injunctive relief as the Court could not enjoin infringement of an expired patent. As such, if the Court overlooks the lack of any pleading of infringement on the new patents, to have an objective basis for its claims, Catch Curve must have had a viable claim for money

damages based on IGC's alleged infringement of the '884 and '691 patents on the date it served the Infringement Contentions.

However, no such finding is possible here.  IGC had no "actual" notice of any alleged infringement of these patents until Catch Curve served its Infringement Contentions because they were not mentioned in the Complaint and IGC never received any other written notice of any alleged infringement relating to the '884 and '691 patents.  Therefore, since Catch Curve charged IGC with infringing the articles of manufacture claimed in the '884 and '691 patents, whether an objective litigant could prevail on these infringement claims turns on whether IGC had "constructive notice" of potential infringement of the '884 and '691 patents.  35 U.S.C. § 287(a); *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993) (patentee's damages limited to the earlier of giving actual notice or constructive notice through marking).  Additionally, where a patentee licenses its patent to licensees, as Catch Curve did here across the SOHO Market, it has a duty to ensure that its licensees mark their products adequately. *Soverain Software, LLC v. Amazon.com, Inc.*, 383 F.Supp.2d 904, 908-09 (E.D. Tex. 2005) (finding, *inter alia*, no constructive notice when patentee failed to cause its licensees to adequately mark their websites with the patents-in-suit).

The burden on Catch Curve to establish constructive notice is heavy: "[i]n order to satisfy the constructive notice provision of the marking statute, *Nike* must have shown that *substantially all* of the Air Mada Mid shoes being distributed were marked, and that *once marking was begun, the marking was substantially consistent and continuous*." *Nike*, 138 F.3d at 1446-47 (also noting that compliance is a question of fact) (emphasis added). Therefore, IGC can also demonstrate objective baselessness by showing that there was no probable cause to believe that Catch Curve could obtain relief due to its inability to satisfy the notice requirements in the marking statute.

The failure to comply with the marking statute would also dispose of the two proffered justifications by Catch Curve, *i.e.,* that Catch Curve intended to amend the complaint and that the addition of the new patents was merely a "procedural" defect. *j2 Dec. 7th Brief* at 19-20 [Dkt. No. 188]. Even if Catch Curve had filed an amended complaint on the day it served the Infringement Contentions, and had probable cause to believe that IGC infringed, it would have been legally impossible to obtain even one dollar from IGC on the '884 and '691 patents because the patents had expired before IGC had notice of any potential infringement of these patents.

*Soverain* is also instructive in that while pure method patents often do not need to be marked because there is nothing to mark, where, as here, the licensees operate a business that runs through a website (*i.e.,* fax-to-email services), the patentee must cause each licensee to mark the patented inventions through a screen on its website. *Soverain*, 383 F.Supp.2d at 909. Although its searches were not exhaustive, IGC can find no reference to the AudioFAX Patents on many of the licensees' websites, and, where references can be found, the '884 and '691 patents are not referenced. *See, e.g., Declaration of James M. Heiser*, Ex. 1 (pg. 4) (emphasis added). In fact, Catch Curve's website itself failed to list the '884 and '691 patents. *Heiser Decl.*, Ex. 2. As such, IGC is entitled to discovery from Catch Curve and all of its licensees regarding their compliance with the marking statute to show that no reasonable litigant could have expected to obtain any relief from the Court against IGC on the '884 and '691 patents.

**B.    IGC Is Entitled to Discovery on Whether Catch Curve Reasonably Expected Success on the Merits and Whether the Patents Are Valid and Enforceable**

A patent can be held unenforceable if the patent holder engaged in "inequitable conduct" during *ex-parte* prosecution of the patent -- for example, by breaching its duty to disclose to the Patent Office ("USPTO") all information known to the applicant (or attorney) that is material to patentability, including any

information that refutes or is inconsistent with a position the applicant takes in asserting an argument of patentability.   37 C.F.R. § 1.56.   Where inequitable conduct occurs in relation to one or more claims during prosecution of a patent application, the entire patent is rendered unenforceable.   *Agfa Corp. v. Creo Products, Inc.,* 451 F.3d 1366, 1379 (Fed. Cir. 2006).   Accordingly, if IGC shows inequitable conduct, there are no "objectively reasonable" justifications for filing suit on those patents and discovery is needed on these topics.

For example, IGC believes that the patents would never have issued had the patent seekers cited to the USPTO those prior art materials cited on Exhibits 3 and 4 during the prosecution of any of the AudioFax Patents.  *Heiser Decl.,* Exs. 3 and 4.  IGC is entitled to discovery on the issue of whether the patent seekers or the prosecuting attorneys knew of these references and if any were intentionally withheld from the USPTO.  *Complaint* ¶¶ 2, 20, 64-66, 70-72.  IGC has alleged that the prosecuting attorneys knew of at least some of this prior art, but willfully failed to cite it before the USPTO with the intent to deceive the examiner, which resulted in the issuance of the patents.   Complaint ¶ 69-72.  Further, the '926 patent was invalid as the subject matter would have been obvious to anyone skilled in the art, and so could not be patented under 35 U.S.C. § 103. Specifically, the '926 patent was rendered obvious by a facsimile machine manual,

"How to Use Your Panafax UF-250," Matsushita Graphic Communication Systems, 1988, which described the operation of a particular facsimile machine that was in use in Japan in 1984 that could store and forward facsimiles like the claimed invention.  The prosecuting attorneys knew about the reference because it was supplied to them by IGC in 2006.  Complaint ¶ 64-68.  During the *ex-parte* proceedings before the USPTO, however, Catch Curve avoided obviousness rejections by withholding this prior art from the USPTO during prosecution of some of the patent applications, but then later admitted that it was material by citing it in the last to issue, two patents.  Complaint ¶ 68, 70.  But in order to prove its allegations, that the AudioFAX Patents were procured by intentional, material misrepresentations, IGC must have access to the files of the patent seekers and their prosecuting attorneys.

Additionally, if discovery shows that Catch Curve's acts rise to the level of fraud on the USPTO, this would also strip Catch Curve of its *Noerr-Pennington* immunity.  *See, e.g., Noblepharma AB v. Implant Innovations*, 141 F.3d 1059, 1072-73 (Fed. Cir. 1998);  *Hydranautics v. Filmtec Corp.*, 70 F.3d 533, 537-38 (9th Cir. 1995) (patents procured by intentional, material misrepresentations, make lawsuit "objectively baseless").  While it is true that the Court previously dismissed IGC's *Walker Process* claims without prejudice, this does not mean that

IGC cannot obtain discovery to establish fraud on the USPTO to defeat Catch Curve's affirmative defenses. IGC is therefore entitled to discovery to assess the merits of the patent claims, the potential unenforceability of the patents, and what Catch Curve would have understood about the strength of IGC's defenses when it filed and continued to pursue the case.

### C.    IGC's Requested Discovery on the Objective Baselessness Issue

Although IGC has not had access to any discovery and cannot offer a complete list of all documents and testimony that are relevant, it preliminarily identifies the following witnesses and topics for document discovery:

- <u>Prosecuting Attorneys and Inventors</u>:    IGC must examine the original inventors, Richard J. Gordon & James R. Kennedy, together with: (1) Irell & Manella, original counsel to the inventors and prosecuting attorneys for the '926 patent, (2) Blakely, Sokoloff, Taylor & Zafman LLP, as attorneys for the '926 reexamination requestor, (3) Womble, Carlyle Sandridge and Rice LLP, as prosecuting attorneys for the '302, '548, '034, and '021 Patents, and (4) Weatherly Kerven & Seigel LLC as prosecuting attorneys for the '978, '884, and '691 Patents.  IGC must examine these individuals and their files as to the conception, reduction to practice (actual or constructive), any alleged diligence in reduction to practice and/or cessation of attempted reduction to practice of each of the asserted claims of the AudioFAX Patents, together with submissions made to the USPTO relating thereto and communications with j2 or Catch Curve.

- <u>Catch Curve Witnesses</u>.  IGC is entitle to depose Michael McLaughlin, Ryan Strong, and Mark Bloomfield regarding the decision to charge IGC with infringing patents not in its Complaint, as well as the bases for its allegations of infringement, pre-filing investigation, allegations regarding IGC's accused products, and specific claims of the patents asserted.   IGC must further determine which of IGC's documents and related advertising materials have been reviewed by Catch Curve when the Infringement Contentions were served, and Communications with IGC regarding prior art.

- <u>j2 Transition Team</u>.   During the Transition Services provided in the 2000 timeframe, the engineering team at IGC had gone over in great detail the entire operation of the MaxEmail / eFax system with Amit Kumar, Kamran Izadpanah (j2's VPs of Engineering), Philippe Fontilea (IGC's point of contact for transition), Hemi Zucker, then President Steve Hammerslag and, later, Richard Ressler.

- <u>j2 Personnel with MaxEmail Accounts</u>.   At various times subsequent to the year 2000, j2 personnel obtained accounts with IGC's MaxEmail service.   For example, Zohar Loshitzer, Executive VP, Corporate Strategy, and Mike Pugh, VP Marketing, both had accounts in the years leading up to the suit.   These individuals have actual knowledge that there is no infringing "fax-to-fax" component in MaxEmail.

- <u>Mike Oliszewski:</u> Mr. Oliszewski testified that he developed a software product for Western Union with the functionality to send and receive a facsimile and we added facsimile message functionality later as well. *Oliszewski Dep*. 15: 18-25; 16: 1-4.  Oliszewksi also referenced a "prior public use" of the technology that was never submitted to the Patent Office, and stated that j2's chairman, Richard Ressler, believed that the AudioFAX Patents were "ridiculous," that the technology had been in public use since the 1980s, and that there was no infringement. *Oliszewski Dep*. 84: 8-25; 85: 1-6.

IGC is also entitled to document discovery relating to these topics from the above-referenced individuals.   Additionally, IGC is entitled to the documents that Catch Curve would have otherwise been required to produce pursuant to Local Patent Rule 4.1(c).

### D.    IGC is Entitled to Discovery Regarding Its § 285 Claims

As the Court previously found in its ruling dismissing Catch Curve's infringement claims, "dismissal does not preclude IGC from moving for attorney's fees pursuant to § 285 in the course of the remaining litigation." [Dkt. No. 181 at 10-11].   A case may be deemed exceptional under § 285 where there has been

"fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012) (citations omitted). This inquiry is independent of the baselessness inquiry. *Id.* at 919.

The Court also recently granted IGC leave to file a brief pointing out j2 and Catch Curve's conflicting representations to the Court about how Venali's system operates. [Dkt. No. 199 at 13]. These misrepresentations are noteworthy because j2 now owns Venali and knew how Venali's system operated at the time it falsely told the Court that "[t]he Federal Circuit affirmed summary judgment of non-infringement because Venali's system was not capable of sending messages to fax machines-faxes were *only* delivered as emails." *Sur-Reply* at 2 (emphasis in original) [Dkt. No. 197]. j2 and Catch Curve also continue to erroneously assert that IGC's outbound fax capability could have infringed the claims. But as this court knows from the printout submitted by IGC from Venali's website [Dkt. No. 198], the Venali system had the same outbound fax capability as IGC. *See*, *Heiser Decl.*, Ex. 5. These apparent misrepresentations, which have been ongoing, are important because of Catch Curve's repeated assertion that its Infringement Contentions were permitted under the Federal Circuit's ruling because the Venali

- 13 -

system was incapable of sending faxes to fax machines. *See, e.g.,* [Dkt. No. 197].

Therefore, IGC is entitled to discovery on topics relating to litigation misconduct.[2]

## IV.  IT IS TOO SOON TO TELL WHETHER SUMMARY JUDGMENT IS APPROPRIATE FOR EITHER SIDE

Assuming Catch Curve brings a motion for summary judgment, IGC must

only produce evidence from which a reasonable jury could conclude that the

litigation was objectively baseless. *See generally, Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255 (1986).  Moreover, the Federal Circuit has cautioned against

summary judgment where misrepresentations to the USPTO are at issue.  *See,*

*e.g., Digital Control, Inc. v. Charles Machine Works,* 437 F.3d 1309, 1317 (Fed.

Cir. 2006).  Additionally, a premature summary judgment motion by Catch Curve

would only be met with a request for relief from IGC under Rule 56(d) so that

discovery can be completed.  This will only cause another round of repetitive

briefing that will not bring the matter closer to a conclusion.

At bottom, if j2 or Catch Curve believe that there is no genuine issue of

material fact as to whether this lawsuit has an objective basis, and that IGC has

---

[2]      *See, e.g.*, *Eon-Net, LP et al. v. Flagstar Bancorp.*, 653 F.3d 1314, 1325-26 (Fed. Cir. 2011) where the Federal Circuit noted discovery, including interrogatory responses produced in another case involving the same Patent Portfolio and deposition testimony of the patentee's principal, supported that the litigation was objectively baseless due in part to the patentee's "cavalier attitude" toward the "patent litigation process as a whole."

had adequate discovery such that Rule 56(d) would not apply, the proper approach is to bring a motion for summary judgment at the appropriate time, not to block IGC from taking reasonable discovery.  Further, the probable cause issue will likely turn on witness credibility issues that will require the jury to assess the truthfulness of j2 and Catch Curve's witnesses.  On a full record, whether on summary judgment or at trial, there will be ample evidence to show a lack of probable cause.  The Court should not tie IGC's hands by preventing IGC from taking discovery and then allow j2 and Catch Curve to exploit a factual hole that they created by claiming that IGC lacks evidence to show that the case is baseless.

Given that the Court will have to confront the issue of Catch Curve's litigation conduct regardless of the outcome of the objective inquiry, rather than bifurcate the case and invite further discovery disputes about whether a given request is targeted towards the objective or subjective prong, the Court should simply deny the pending requests for a protective order and allow the case to proceed as a unified whole.  IGC should not have to potentially go through discovery a second time to satisfy the subject part of the *PRE* test.

## CONCLUSION

For the foregoing reasons, the Court should permit the requested discovery so that the matter can proceed to its conclusion.

- 15 -

This the 20th day of March 2013.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

/s/Michael J. Powell
Michael J. Powell
Georgia Bar No. 586275
Damany F. Ransom
Georgia Bar No. 594774
Monarch Plaza
3414 Peachtree Road, Suite 1600
Atlanta, Georgia  30326
(678) 406-8700 - Telephone
(678) 406-8701 - Facsimile

Of Counsel:
Robert J. Schneider, IL (ARDC #2499223)
James Heiser, IL (ARDC #6280191)
CHAPMAN AND CUTLER LLP
111 West Monroe Street, #1700
Chicago, Illinois  60603-4080
(312) 845-3919 - Telephone
(312) 701-2361 - Facsimile

*Attorneys for Integrated Global Concepts, Inc.*

## CERTIFICATE OF COMPLIANCE

Undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections (Times New Roman, 14 point) approved by the Court in Local Rules 5.1 (C) and 7.1 (D).

This the 20th day of March 2013.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

/s/Michael J. Powell
Michael J. Powell

### CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2013, I electronically filed the foregoing

**Integrated Global Concepts, Inc.'s Brief in Support of Request for Discovery**

with the Clerk of Court using the CM/ECF system which will automatically send

email notification of such filing to all counsel of record.


/s/Michael J. Powell
Michael J. Powell